## STATE v. W. T. POLLOCK.

No. A-443.   Opinion Filed February 6, 1911.

(113 Pac. 207.)

1.   GRAND JURY—Selection and Impaneling.  A substantial com-
pliance with the statute with reference to the manner of select-
ing and impaneling a grand jury is all the law requires.

2.   GRAND JURY—Excusing Grand Juror—Replacing on Panel. For
facts held to be a substantial compliance with the statutes in
drawing and impaneling a grand jury see opinion.

(Syllabus by the Court.)

*Appeal from McClain County Court; George W. Welch, Special
Judge.*

W. T. Pollock was indicted for permitting gaming on prem-
ises.   On an order setting aside the indictment, the State appeals.
Reversed and remanded.

An indictment was returned by the grand jury of McClain
county at the June, 1909, term of the district court, against
appellee, wherein he was charged with being the owner of a cer-
tain building located in the city of Purcell, in McClain county,
and that he knowingly and designedly permitted one A. S. Jones
to set up in said building a gambling device, namely, a poker
table, to be used for the purpose of gambling.   This indictment
was duly transferred from the district court to the county court
of McClain county for trial.   Appellee filed a motion in the coun-
ty court to set aside this indictment.   The grounds upon which
this motion is based are stated in the opinion.   The county judge
sustained the motion to set aside the indictment.

*Charles West*, Atty. Gen., and *Ben F. Franklin*, Co. Atty.,
for the State.

*J. F. Sharp*, for appellee.

FURMAN, PRESIDING JUDGE.   (after stating the facts as
above).   First.   This indictment was found by the grand jury

at the June, 1909, term of the district court of McClain county. The record shows that, when the grand jury was first impaneled, R. E. Stone and R. L. Robertson, being duly summoned to serve on said grand jury, were excused by the court. After said grand jury had been in session some two weeks, it was discovered that one member of the grand jury was a minor. Thereupon said minor was discharged from the grand jury, and the court entered the following order:

"In re grand jury. The court orders that the clerk of this court issue a venire for R. E. Stone and R. L. Robertson, two of the grand jurors who were heretofore summoned as such, and who were excused by the court until they were otherwise needed."

The grand jury was then reorganized, and the said R. E. Stone and R. L. Robertson became members of the reorganized grand jury, as appears from the following order of the court:

"It now appearing to the court that R. E. Stone and R. L. Robertson were summoned upon the regular venire to serve as grand jurors, and were excused by the court until otherwise needed to serve as said grand jurors, as provided by law, and they are duly qualified for the completion of this panel, it is therefore ordered by the court that the said R. E. Stone and R. L. Robertson be, and they are hereby, placed upon the regular venire of this grand jury, and it further appearing to the court that they and each of them possesses the necessary legal qualifications, and no one objecting to them or any one of the remaining panel, the following named persons are duly sworn and designated by the court as the grand jurors for this the June, 1909, term of this court, to wit: J. B. Burleson, S. G. Barrow, G. Albert, M. S. Robertson, D. Wynn, N. G. Derrick, A. C. McEldery, R. C. Abernathy, R. J. Wardlow, G. W. Clopton, R. E. Stone, and R. L. Robertson."

The indictment in this case was returned in the district court by this reorganized grand jury. Appellee claims that the district court erred in having R. E. Stone and R. L. Robertson summoned on the panel of the reorganized grand jury after they had been excused by the court. Standing alone, the first entry in the record which shows that R. E. Stone and R. L. Robertson were excused would strongly indicate that they were discharged, and that their relation to the court as jurors had terminated, but the other entry

in the record shows that they were only excused by the court until they were otherwise needed. There is no conflict between these orders of the court. The second order merely makes plain what was obscure in the first order in the record. The court has the power to make any alteration or correction in the record which is necessary to cause it to speak the truth, and, if any mistake occurred in the first record, it was cured by the correction in the second record. We therefore find that as a matter of record the court never did discharge R. E. Stone and R. L. Robertson, but only temporarily excused them, and that they were at all times subject to the orders of the court. The question which now presents itself is as to whether or not the court had the power to temporarily excuse R. E. Stone and R. L. Robertson, and to place them on the panel of the reorganized grand jury.

We fully agree with counsel for appellee that, under the common-law doctrine of a strict construction of penal statutes which prevails in most of the states of the Union, such action upon the part of the trial court would not only be illegal, but would also be ground for reversal, but the authorities cited by counsel for appellee are not applicable to the criminal jurisprudence of Oklahoma. Section 6487, Snyder's Comp. Laws Okla. 1909, is as follows:

"The rule of common law that penal statutes are to be strictly construed has no application to this chapter. This chapter establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice."

Section 3995, Snyder's Comp. Laws Okla. 1909, is as follows:

"A substantial compliance with the provisions of this act shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder unless the irregularity in drawing, summoning, or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial."

Section 6957, Snyder's Comp. Laws Okla. 1909, is as follows:

"On an appeal the court must give judgment without regard

to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Under these sections, it is plain that the common-law doctrine of a strict construction of penal statutes has no application to the criminal laws of Oklahoma, and, indeed, should have none. This doctrine originated at a time when the people believed in witchcraft, and when the whipping post and the ducking stool were resorted to as proper modes of legal punishment. At this time *ex post facto* laws were passed and enforced and bills of attainder were enacted and were regarded as legal and just. Under these conditions, the doctrine of a strict construction of penal statutes was almost a necessity, but these conditions have long since passed away, and under the wise, just, and humane system of laws which we have there is now no reason for continuing to enforce the arbitrary and illogical technical rules which prevailed at that time. Men are no longer governed by superstition. Intelligence is now the rule. Men are not prosecuted for political offenses, and punishments are not inflicted as a matter of malice or for revenge, but simply for the reformation of criminals, and for the protection of society. Many of the technical rules which are now enforced in the courts are simply antiquated relics of barbarism, and tend to obstruct and defeat the administration of justice. Penal laws should be construed liberally, with a view to promote the objects for which they were enacted, and in furtherance of justice; and, when it appears that there has been a substantial compliance with the provisions relating to criminal procedure, the action of the courts should be upheld, although the statute was not literally complied with, unless it affirmatively appears that, by the failure of the court to comply literally with the provisions of the statute, a defendant has been deprived of some substantial right. This is the true meaning and import of our statutes as we understand them, and it is upon this basis that we decide all questions submitted to us for determination. Applying, then, these rules of construction to the question now before us, what is the attitude of this case? It is not claimed that the law was not literally complied with in the original selection and

drawing of the first grand jury, or that Stone and Robertson were not regularly selected and drawn as grand jurors in the first instance. If Stone and Robertson had not been regularly selected and drawn as grand jurors, or if they had been discharged from the panel, a very different question would be presented to that which we are now called upon to decide. The irregularity complained of is that the court was without the power to excuse the grand jurors Stone and Robertson temporarily, and then to place them on the panel of the reorganized grand jury. We find the following provisions in section 3986, Snyder's Comp. Laws Okla. 1909:

"The first names drawn, to the number stated in the judge's order, not to exceed twenty-four, if a grand jury is ordered, shall be summoned as grand jurors, and the grand jury shall be impaneled from said persons. If the judge so directs, the persons summoned for the grand jury panel and not used may be transferred to the petit jury panel. Additional and other drawing of as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the impaneling of a new grand or petit jury, during any term of court, if, in the judgment of the court the same shall be necessary, or if, for any cause the court, in its discretion, shall deem other jurors necessary. The court may excuse or discharge any person drawn and summoned as a grand or petit juror, whenever, in its discretion, such action shall be deemed expedient."

It is seen from this that the statute provides that "additional and other drawing of as many names as the court may order may be had at any such time as the court or judge may order for the completion of a grand or petit jury panel, or for the impaneling of a new grand or petit jury, during any term of the court, if, in the judgment of the court, the same shall be necessary, or if, for any cause the court, in its discretion, shall deem other jurors necessary," and the statute further gives the court the power to excuse or discharge any juror drawn or summoned as a grand or petit juror, whenever, in its discretion, such action may be deemed expedient. The statute makes a distinction between excusing and discharging a grand juror. When a grand juror

has been discharged, this terminates his connection with the court
as a grand juror. But under this statute the court, in its dis-
cretion, may temporarily excuse a grand juror, and, if the neces-
sity therefor occurs, may have said grand juror replaced on the
panel. This statute vests the trial court with a wide range of dis-
cretion with reference to impaneling a grand jury, and the ac-
tion of the court in this respect should not be disturbed unless it
clearly appears that there has been an abuse of this discretion,
whereby the party complaining has been deprived of a substantial
right. The provision that a juror shall not be allowed to serve
more than two weeks at any term, unless at the end of such period
he is upon a panel engaged in the consideration of a case in which
event he may be excused when such case is terminated, applies
only to members of the petit jury. In this case it is not shown
that the action of the court in temporarily excusing Stone and
Robertson from the grand jury and placing their names upon the
panel of the reorganized grand jury deprived the defendant of
a substantial right. When the law has been substantially com-
plied with, and it is not shown that the defendant has been de-
prived of some substantial right, he will not be heard to complain.
That this is the modern doctrine there can be no question.

"But statutes regulating the manner of making jury lists
and the selection and drawing of grand jurors are frequently held
to be directory merely and not mandatory; and it may be laid
down as a general rule that courts do not look with indulgence
upon objections to irregularities in selecting or drawing grand
jurors committed without fraud or design and which have not
resulted in placing upon the panel disqualified jurors, and that
mere irregularities not affecting the competency of any of the
jurors, at least such as do not amount to a substantial departure
from the statutory requirements, but show an honest intention to
conform thereto will not affect the validity of their proceedings."
(20 Cyc. p. 1306.)

The reasons for this rule of law are obvious. The grand
juries do not try cases, but merely prefer charges against the
accused. The manner of their selection is ordinarily of little con-
sequence to a defendant, he being entitled to claim only fair and
impartial grand jurors who possess the necessary qualifications,

while, on the other hand, it is of great consequence to the administration of justice that it shall not be delayed by mere technical objections. For these reasons, we hold that the county court erred in sustaining the motion of the appellee to set aside the indictment in this case.

Section 6947, Snyder's Comp. Laws Okla. 1909, is as follows:

"Appeals to the Criminal Court of Appeals may be taken by the state in the following cases and no other: (1) Upon judgment for the defendant on quashing or setting aside an indictment or information. (2) Upon an order of the court arresting the judgment. (3) Upon a question reserved by the state."

Section 6950, Snyder's Comp. Laws Okla. 1909, is as follows:

"An appeal taken by the state in no case stays or affects the operation of the judgment in favor of the defendant, until the judgment is reversed."

From these sections it is seen that, when the appeal is from a judgment quashing or setting aside an indictment or information or from an order of the court arresting a judgment, an appeal taken by the state will not stay or affect the operation of such judgment or order in favor of the defendant until the judgment or order is reversed. An appeal upon a question reserved by the state does not bring up any part of the trial or proceedings of the case, except the question reserved and the judgment of acquittal, and, if such question reserved is decided in favor of the state, it simply settles that question of law, and does not affect the verdict of acquittal. As this is an appeal from a judgment setting aside an indictment, the judgment of the lower court is reversed and the case is remanded, with directions to the county court of McClain county to vacate the judgment setting aside the indictment and reinstate this cause upon its docket, and to proceed as though the order setting aside the indictment had never been made.

ARMSTRONG and DOYLE, JUDGES, concur.